THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| GARY CLAYTON VIENS,<br><br>Plaintiff,<br><br>v.<br><br>ANJULIE MCFARLAND et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS DEFENDANTS VON DWINGELO AND CONDIE AND ADDRESSING DISCOVERY<br><br>Case No. 2:25-CV-495-JNP<br><br>Chief District Judge Jill N. Parrish |

As a Utah state inmate, Plaintiff Gary Clayton Viens filed this *pro se* civil-rights action, *see* 42 U.S.C. § 1983.[1] Plaintiff names as defendants three Utah Department of Corrections ("UDOC") mental-health therapists: Anjulie McFarland, Faith Von Dwingelo, and Kaytlyn Condie. Dkt. No. 1. The Complaint alleges that McFarland and Plaintiff had sexual contact, from which his legal claims arise. *Id.* As a remedy, Plaintiff seeks damages only. *Id.*

Defendants Von Dwingelo and Condie move to dismiss Plaintiff's claims against them based on qualified immunity and failure to state a claim upon which relief may be granted. Dkt. No. 34. Plaintiff responded.[2] Dkt. No. 39. Defendants replied. Dkt. No. 43.

---

[1] Section 1983 establishes a "civil action for deprivation of rights," stating that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State," "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

[2] Plaintiff's response addresses only one issue in the motion to dismiss; Defendants inadvertently omitted the word "not" from one passage and therefore wrote that Plaintiff's "Complaint does meet the elements for a constitutional claim." Dkt. No. 32, p. 8. Plaintiff argues that this "admittance" renders the motion to dismiss moot. Dkt. No. 39. As Defendants explain, the omission was a scrivener's error and should be disregarded. Dkt. No. 43, at 2-3.

Plaintiff also moves for discovery; for the court to order that he be given access to an electronic tablet; and for leave to file further proof of exhaustion of administrative remedies. Dkt. Nos. 60, 66, 68.

## MOTION TO DISMISS

### I. Standard of Review

Assessing a motion to dismiss, the court takes all well-pleaded factual assertions in the complaint as true and regards them in the light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when the plaintiff has not pleaded a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citation omitted). "Facts, not conclusions, must be pleaded—'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (citation omitted).

The court reviews the sufficiency of Plaintiff's allegations per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019). Indeed, § 1983 cases often include a list of defendants, like the government agency and a number of government actors sued in their individual capacities, and it is "important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom* . . . as

distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1249-50 (emphasis in original). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried the burden of providing "adequate notice as to the nature of the claims against each." *Id.* at 1250.

The facts stated in each of the following sections are taken from Plaintiff's allegations and viewed in a light most favorable to him. They are taken as true for this Order only.

## II. Defendant Von Dwingelo

Plaintiff alleges that Defendant Von Dwingelo is a mental-health therapist who trained Defendant McFarland and acted as her supervisor at the time of her allegedly unconstitutional behavior. Dkt. No. 1, at 2, 4.

### *A. State Law, Prison Policy, & Federal Law Claims*

Plaintiff alleges Von Dwingelo "failed in reporting the relationship [between Plaintiff and McFarland] violating Utah Code, prison policy, & [Prison Rape Elimination Act]." Dkt. No. 1, at 5. More specifically, Plaintiff asserts Von Dwingelo "violated Utah 64-13-47 Prison Sexual Assault program (2)(a)(ii . . . (b) . . . (d) . . . Also, Utah Code 58-42a-502 unprofessional conduct (10) abandoning or neglecting a client in need of immediate professional care w/out making reasonable arrangements for the continuation of care." Dkt. No. 1-3, at 13.

#### a) Utah Code

Section 58-42a-502 is part of the Occupational Therapy Practice Act and defines "unprofessional conduct" under the Act. UTAH CODE § 58-42a-502 (2026). The Act does not appear to provide for a private right of action. *Id.* §§ 58-42a-101 to -502. Instead, the unprofessional conduct defined in § 58-42a-502 may be grounds for the Utah Division of

Professional Licensing to deny a license to an occupational therapist. *Id.* §§ 58-1-401, 58-42a-401. Any attempted state-law claim arising out of this Act here is therefore dismissed.

Section 64-13-47, titled "Prison Sexual Assault Prevention Program," is part of the Utah Code chapter, "Department of Corrections--State Prison." *Id.* §§ 64-13-1 to -51. The section authorizes UDOC to "make rules establishing policies and procedures regarding sexual assaults that occur in correctional facilities." *Id.* § 64-13-47. The rules cover training, reporting, monitoring, investigations and staff discipline, and data collection. *Id.* This Act also does not appear to provide for a private right of action. *Id.* Any attempted state-law claim arising out of this Act is therefore dismissed.

b) Prison policy

Violation of a prison regulation is unconstitutional only if, in violating the regulation, the prison employee also acts in a way that does not "conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (citation modified). The primary purpose of prison regulations is "to guide correctional officials in the administration of a prison," not to "confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). Plaintiff does not allege that Von Dwingelo's violations of prison regulations simultaneously violated the Constitution. Any attempted claim based on violation of prison policy alone is therefore dismissed.

c) Prison Rape Elimination Act

The Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. §§ 30301 to 30309, "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission," but nothing in the PREA gives rise to a private right of action under § 1983. *Haffner v. Geary Cty. Sheriff's Dep't*, No. 18-3247, 2019 U.S. Dist. LEXIS 50222, at *10 (D. Kan. Mar. 26, 2019) (citations omitted) (collecting cases). "[T]o seek redress through § 1983, . . . a plaintiff

must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original) (citation omitted). Thus, Plaintiff may not pursue a § 1983 claim based on Von Dwingelo's alleged failure to meet the PREA's requirements.

*B. Supervisory liability*

Plaintiff alleges that Von Dwingelo "is the supervisor who trained Anjulie McFarland & makes sense in why she blew it off when [Plaintiff] reached out to her." Dkt. No. 1, at 4. More specifically, Plaintiff asserts that, especially because Von Dwingelo was a supervisor, she should have "immediately contacted the Executive Director & [PREA] - Abided by her contract & Dept. Policy & reported an inappropriate staff/inmate relationship." Dkt. No. 1-3, at 13. Plaintiff's attempted PREA claim is addressed above. This section addresses the allegation that Von Dwingelo is liable to Plaintiff because she was McFarland's supervisor and trainer.

A "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement . . . of which" causes a plaintiff to be deprived of constitutional rights may be liable under Section 1983. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). However, defendant-supervisors may not be held liable "under a theory of respondeat superior." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quotation marks omitted). To establish supervisory liability, a plaintiff must adequately allege "an affirmative link between the supervisor and the constitutional violation." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (citation modified). Such an affirmative link requires "(1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Dodds*, 614 F.3d at 1195. The state of mind required depends on the constitutional right at issue, *Schneider*, 717 F.3d at 769, but it "can be no less than the *mens rea*

required . . . to commit the underlying constitutional violation," *Cox*, 800 F.3d at 1249 (citation modified).

Plaintiff's general assertion that Von Dwingelo was McFarland's supervisor and trainer when McFarland violated the Constitution does not adequately plead that Von Dwingelo, by enacting policies or her "own individual actions," violated the Constitution. *See Iqbal*, 556 U.S. at 676. Plaintiff's supervisory-liability claim against Von Dwingelo is therefore dismissed.

*C. Eighth Amendment claim*

Plaintiff asserts that he repeatedly told Von Dwingelo of his mental and emotional suffering associated with his relationship with McFarland, but Von Dwingelo's responses were unhelpful, causing him to be "emotionally distraught" and "set[] in" to Post Traumatic Stress Disorder ("PTSD"). Dkt. No. 1-3, at 12. In response, Von Dwingelo asserts the affirmative defense of qualified immunity. Dkt. No. 34. The allegations addressed in this section are found in the Complaint, Exhibit B, Dkt. No. 1-3.

a) Factual Allegations

On September 16, 2024, Plaintiff "had a mental breakdown/crisis & had to be cuffed behind [his] back to a pole in order to prevent self harm." Dkt. No. 1-3, p. 12. Von Dwingelo was one of the "responding therapists." Plaintiff explained to her that he "had a relationship w/a staff member & [he] had to see her everyday after" breaking up, which was "becoming unbearable." Plaintiff "never said the sexual aspect." Von Dwingelo advised "Plaintiff to treat it like any relationship break-up." Plaintiff "promised [he] would not hurt [himself] & this is how it ended." But "stress and anxiety began wearing on [Plaintiff]," who "became emotionally distraught & unable to handle see[ing McFarland] everyday." "[PTSD] was setting in."

Plaintiff "put in [Inmate Care Request] after [Inmate Care Request] to see mental health[;] all ignored."[3] When Plaintiff was finally able to tell Von Dwingelo he was "depressed, [had] thoughts of suicide (no plan)," Von Dwingelo "blew [him] off stating, 'Give it time.'" This was "after she knew of sex abuse."

b) Legal tenets of Eighth Amendment claim

"Jail officials violate a detainee's constitutional rights through deliberate indifference whenever they knowingly ignore a 'substantial risk of serious harm' to an inmate." *Farmer v. Brennan*, 511 U.S. 825, 828-29 (1994) (citation omitted). "Deliberate indifference has objective and subjective components." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component requires that the harm suffered must be "sufficiently serious." *Id.* "A medical need is considered sufficiently serious . . . if the condition 'has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1192-93 (10th Cir. 2014) (citation omitted). The subjective component requires that Plaintiff show that "the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159. The subjective component requires a defendant to "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

c) Legal tenets of qualified immunity

"A § 1983 defendant's assertion of qualified immunity is an 'affirmative defense [that] creates a presumption that the defendant is immune from suit.'" *Truman v. Orem City*, 1 F.4th

[3] This allegation is not affirmatively linked to Von Dwingelo, nor to any defendant. The court therefore does not consider it further.

1227, 1235 (10th Cir. 2021) (citation omitted). A plaintiff may overcome the presumption by showing "(1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct." *Id.*

"A right is clearly established for qualified immunity purposes if 'every reasonable official would have understood that what he is doing violates that right.'" *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1303 (10th Cir. 2021) (citation omitted). "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017) (citation modified). So, "if a reasonable officer might not have known for certain that the conduct was unlawful--then the officer is immune from liability." *Id.*

This means "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Schwartz v. Booker*, 702 F.3d 573, 587 (10th Cir. 2012) (citation omitted). Such an inquiry involves cases decided ahead of the alleged unconstitutional actions or cases reviewing the law as it was before the alleged unconstitutional actions. *Crane*, 15 F.4th at 1304 n.7. "Precedent need not be 'directly on point,' but it 'must have placed the statutory or constitutional question beyond debate.'" *Encinias v. New Mexico Corr. Dep't*, No. 23-2052, 2024 U.S. App. LEXIS 25010, at *10 (10th Cir. Oct. 3, 2024) (unpublished) (citation omitted). "Even when no precedent involves facts 'materially similar' to [the facts of the present case], the right can be clearly established if a precedent applies with 'obvious clarity.'" *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017) (citation omitted). Out-of-circuit cases may also be relied upon for clearly established law. *Id*. at 1208.

Courts have "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court "conclude[s] that the plaintiff has not met his burden as to either part of the two-prong inquiry," qualified immunity *must* be granted to the defendant. *Andersen v. Delcore*, 79 F.4th 1153, 1163 (10th Cir. 2023). Here, the court focuses on prong two of the inquiry, which is dispositive.

d) Analysis

Plaintiff's four-sentence response to the Motion to Dismiss does not address qualified immunity at all. Dkt. No. 39. Plaintiff thus does not overcome the presumption that Von Dwingelo is immune. Plaintiff cites no Supreme Court or Tenth Circuit decision whatsoever, let alone any on-point decision. *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) ("The plaintiff bears the burden of citing to us what he thinks constitutes clearly established law.").

In consideration of Plaintiff's *pro se* status, the court searched for a case clearly establishing a constitutional violation in a situation when a suicidal inmate is given unhelpful advice by a mental-health therapist, resulting in the inmate becoming emotionally distraught and setting in to PTSD. *See Zachary v. Englebird*, No. 1:21-CV-2129, 2025 U.S. Dist. LEXIS 39937, at *21 (D. Colo. Jan. 21, 2025). However, the court could not find such a case, leading it to conclude that Von Dwingelo did not violate clearly established law and is therefore entitled to qualified immunity.

i. Defining the right involved

Before deciding whether Von Dwingelo breached Plaintiff's clearly established constitutional right, the right involved must be defined. *See Encinias*, 2024 U.S. App. LEXIS 25010, at *10-11. "The dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (citation omitted). The analysis centers on specific

allegations against Von Dwingelo herself, not broad or generalized allegations. *See Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

The court assumes that Plaintiff implicitly alleges that Von Dwingelo violated a clearly established right when she failed to provide better advice or care during their two encounters outside of standard therapy sessions and therefore failed to protect Plaintiff from a substantial risk of emotional distress and PTSD. The crucial question is whether, at the time of those encounters, failure to provide better mental-health advice or care in encounters outside conventional therapy for a mentally fragile inmate who was at risk of PTSD was a constitutional violation.

ii. Reviewing applicable case law

As noted above, Plaintiff has not shown that Von Dwingelo violated clearly established law. Plaintiff identifies no case that would have put "every reasonable official" in Von Dwingelo's position on notice that she would violate the Eighth Amendment when she, in in encounters outside conventional therapy sessions during which Plaintiff showed mental fragility, exercised her professional judgment to tell Plaintiff to treat his situation "like any relationship break-up" and to "give it time," while also obtaining assurance that he would not attempt suicide and determining he did not have a plan for killing himself.

As mentioned above, this court undertook its own search for a case clearly establishing a constitutional violation when a mentally fragile, suicidal inmate suffers from emotional distress and PTSD after receiving unhelpful advice from a mental-health therapist in encounters outside conventional therapy sessions. The court has found no such case. The court identified cases involving an inmate's suicide after a prison official received notice of the inmate's suicidality but

did not provide aid.[4] Some of these cases have found that defendants violated a clearly established right. *See, e.g.*, *Lieberenz v. Wilson*, No. 23-1055, 2024 U.S. App. LEXIS 14238, at *18 (10th Cir. June 12, 2024) (unpublished) (when defendant heard an inmate say he was trying to kill himself right then, left the cell with belief that "'something more' should be done to treat" the inmate, and yet "took no steps to protect" the inmate, who later died by suicide, a jury could find defendant "was on notice that his conduct violated clearly established law"); *Cox*, 800 F.3d at 1236-39 ("then-extant clearly established law would not have put jail administrator . . . on notice that he could be held liable . . . for an Eighth Amendment violation" when an inmate received no response to a request for medical help and then died by suicide). But some have found that no clearly established right was violated. *See, e.g., Encinias*, 2024 U.S. App. LEXIS 25010, at *10-12 (concluding clearly established law was not violated when defendants did not facilitate therapeutic treatment for an inmate with serious mental health diagnoses who was at risk for committing suicide and ultimately died by suicide)[5]; *Est. of Simon v. Van Beek*, No. 22-1389, 2023 U.S. App. LEXIS 32692, at *3-6, 10-14 (10th Cir. Dec. 11, 2023) (no clearly established law put transporting officers on notice that not telling jail intake about an inmate's potential suicidality was Eighth Amendment violation when the inmate later died by suicide); *George v. Beaver Cnty.*, 32 F.4th 1246, 1252, 1258-59 (10th Cir. 2022) ("clearly established [law] in June 2014" did not put

---

[4] Suicide *per se* meets prong one of the Eighth Amendment analysis. *Ernst v. Creek Cnty. Pub. Facilities Auth.*, 697 F. App'x 931, 934 (10th Cir. 2017) ("The deliberate indifference test has both objective and subjective components, and death (and therefore suicide) is recognized as a sufficiently serious harm to satisfy the objective standard."). The Court did not find any case indicating that PTSD *per se* meets prong one.

[5] The Tenth Circuit has explained that, when analyzing a qualified immunity defense, "'[a]n unpublished opinion . . . provides little support for the notion that the law is clearly established on [a] point' . . . But an unpublished opinion can be quite relevant in showing that the law was not clearly established." *Grissom v. Roberts*, 902 F.3d 1162, 1168-69 (10th Cir. 2018) (citation omitted).

defendant on notice that placing the inmate in regular cell and failing to tell other officers of the inmate's suicide risk was constitutional violation, though the inmate later died by suicide); *Est. of Burgaz v. Bd. of Cnty. Comm'rs for Jefferson Cnty.*, 30 F.4th 1181, 1183, 1187-89 (10th Cir. 2022) (granting qualified immunity to deputies who were aware of an inmate's history of mental illness, addiction, suicidal tendencies, a prior suicide attempt, because the risk was not "so obvious . . . such that a reasonable officer would have realized" danger, though the inmate later died by suicide); *Crane*, 15 F.4th at 1299, 1307, 1311-12 (the use of punitive isolation for a suicidal and intellectually disabled inmate, who then died by suicide, did not violate clearly established law). Here, Von Dwingelo did attempt to provide advice to Plaintiff and obtained his assurance that he did not intend to commit suicide, distinguishing this case from cases in which prison officials were found to have violated clearly established rights.

The most similar case the court has found involved defendants who were alleged to have "ignored" the plaintiff's requests for help as to mental-health issues. *Tate v. Wiggins*, 805 F. App'x 159, 162-63 (3d Cir. 2020) (unpublished). There, the ignored requests "had a profound effect on [the plaintiff's] recovery" from mental ailments, "forcing him to fight through PTSD, anxiety disorders, and depression." *Id.* Again, though, the facts of that case are distinguishable, as the *Tate* defendants ignored the plaintiff's requests, but Von Dwingelo responded to the two incidents involving Plaintiff and obtained a promise from Plaintiff not to hurt himself, as well as a statement that Plaintiff had no suicide plan. *See* Dkt. No. 1-3. Even if this case were not distinguishable, one unpublished, out-of-circuit case does not provide clearly established law in the Tenth Circuit. *Williams v. Hansen*, 5 F.4th 1129, 1132 (10th Cir. 2021) ("A single unpublished opinion does not show clear establishment of the right.").

In sum, Plaintiff has not identified any case involving the factual context that Von Dwingelo faced, let alone precedent sufficient to render the law clearly established. This court's own research has not unearthed such a case. Plaintiff thus has failed to meet his burden on the clearly established law prong of the qualified immunity analysis, and Von Dwingelo is entitled to qualified immunity. *See Andersen*, 79 F.4th at 1163 (indicating, if plaintiff fails to satisfy either qualified-immunity prong, "court must grant qualified immunity"). This claim is thus dismissed.

*D. Retaliation*

Plaintiff alleges that Von Dwingelo "is the supervisor who trained Anjulie McFarland & makes sense in why she blew it off when [Plaintiff] reached out to her." Dkt. No. 1, at 4. Plaintiff appears to allege that this is "the motivating factor of not treating [Plaintiff's] mental health crisis." *Id.* Von Dwingelo "retaliated by not reporting the relationship in retaliation for her friend[,] then further retaliated by refusing treatment for [Plaintiff] esp after . . . McFarland's firing." *Id.* at 5. Plaintiff further states, "[a]ll 3 Defendants are women & all 3 know one another. Defendant [Von Dwingelo] helped train . . . McFarland[.]" Dkt No. 1-3, at 16.

Establishing a claim of government retaliation in response to the exercise of First Amendment rights requires showing that "(1) 'the plaintiff was engaged in constitutionally protected activity,' (2) 'the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity,' and (3) 'the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Harrell v. Lira*, No. 24-8011, 2025 U.S. App. LEXIS 1300, at *5 (10th Cir. Jan. 21, 2025) (unpublished) (citation omitted).

Plaintiff does not allege that he "was engaged in a constitutionally activity"; that Von Dwingelo's adverse actions of blowing him off, denying him treatment, or not reporting the

relationship were motivated by Plaintiff's involvement in a constitutionally protected activity; nor that Von Dwingelo's actions chilled his participation in a constitutionally protected activity. Thus, Plaintiff's allegations as to his and Von Dwingelo's behavior do not establish any of the three elements of a retaliation cause of action. This claim is thus dismissed.

*E. Conclusion*

Based on Plaintiff's failure to state a claim upon which relief may be granted and Defendant Von Dwingelo's affirmative defense of qualified immunity, the court grants Von Dwingelo's motion to dismiss. Dkt. No. 34.

**III. Defendant Condie**

Plaintiff alleges that Defendant Condie violated his "1st Amendment by retaliating for filing claims on coworker/friend." Dkt. No. 1, at 5. More specifically, Plaintiff asserts that "Condie has retaliated against [him] by making up some 'kites'& has stonewalled [him] from getting back into the program" [6] he was "kick[ed] out of for acting out . . . directly related to the incident" of "the abuse by . . . McFarland." Dkt No. 1-3, at 15. "All 3 Defendants are women & all 3 know one another. . . Defendant Condie is a co-worker of [McFarland] in the same building." *Id.* at 16.

A favorable reading of Plaintiff's allegations might allow the court to infer that the "claims" he references were filed as grievances or included in a lawsuit. Dkt. No. 1, at 5. This would establish that Plaintiff was exercising his First Amendment rights. *See, e.g., Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (indicating that an inmate's filing of grievances was protected First Amendment activity).

[6] A "kite" is a written note or letter sent by an inmate.

However, Plaintiff fails to satisfy the requirement that Condie's actions caused Plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *Id.*; Dkt. Nos. 1, 1-3. The Complaint contains no hint that Condie's behavior intimidated Plaintiff from filing grievances or initiating court cases. Hence, Plaintiff fails to state a claim against Defendant Condie, and the court grants her motion to dismiss. Dkt. No. 34.

**IV. Defendant McFarland**

Plaintiff also asserts that Defendant "McFarland violated Utah Code 64-13-47 & 58-42a-502/76-5-412 Custodial Penalties." Dkt. No. 1-3, at 6. As discussed above, Utah Code sections 64-13-47 and 58-42a-502 do not authorize a private right of action.

And Section 76-5-412 defines a crime, but a federal civil-rights action is not an appropriate vehicle for a plaintiff to hold other individuals liable under a state's criminal code. *See Hines v. Allbaugh*, No. CIV-15-901-R, 2017 U.S. Dist. LEXIS 122413, at * 23 (W.D. Okla. Aug. 3, 2017) ("[A] declaration that Defendants have violated criminal statutes is inappropriate in this civil rights case."); *Martin v. Creek Cnty. Jail*, No. 10-CV-699, 2011 U.S. Dist. LEXIS 44008, at *4 (N.D. Okla. Apr. 22, 2011) (stating that, in federal civil-rights action, a "plaintiff lacks standing to bring criminal charges"). The text of section 76-5-412 does not appear to offer a separate cause of action empowering private citizens to seek money damages. UTAH CODE § 76-5-412. Plaintiff's claims against McFarland for violations of state law are therefore dismissed.

## MOTION FOR DISCOVERY

Having dismissed Plaintiff's claims against Defendants Von Dwingelo and Condie, one claim remains: Plaintiff's claim that Defendant McFarland violated the Eighth Amendment when she had sexual contact with him. Dkt. No. 1, at 5.

McFarland filed a *Martinez* report limited to her affirmative defense that Plaintiff failed to exhaust his administrative remedies in the UDOC grievance system.[7] Dkt. No. 51. The report attaches exhibits, including a declaration, UDOC policy, and copies of grievance documents. Dkt. Nos. 51, 51-1 to 51-12. Plaintiff also attached some grievance documents to his Complaint and moves to include in the record a letter from the UDOC Grievance Office. Dkt. Nos. 1, 68.

Potentially relevant evidentiary documents in the current record are as follows[8]:

1. Handwritten document labeled, "Level 1 Grievance," dated October 10, 2024, in which Plaintiff stated, "I was groomed, manipulated, lied to, emotionally damaged by a therapist here for sexual gratification. This is illegal sexual misconduct." Dkt. No. 1-2, at 12. Plaintiff requested "[t]o meet w/[PREA] & Investigations to set something up to record her to prove this & prevent it from happening again." *Id.*
2. "Offender Grievance form Level 1 Grievance," dated October 23, 2024, in which Plaintiff stated, "I was sexually abused/misconduct by Anjulie McFarland on multiple occasions . . . [R]emedy you seek? Lawsuit for 8th Amendment violation & immediate investigation." Dkt. No. 1-2, at 16.
3. "Offender Grievance Form Level 1 Grievance," dated October 25, 2024, in which Plaintiff stated, "Anjulie McFarland sexual misconduct, sexual abuse, abuse & manipulation of power . . . I've tried to get help but feel since I am a man & her a woman it is not taken serious. I also feel as if nothing is being done and/or not believed." Dkt. No. 1-2, at 14.

---

[7] A *Martinez* report is an investigative report prepared by prison officials in a *pro se* prisoner civil rights case. It is designed to give the District Court a reliable factual record so that the District Court can decide whether the case should proceed. *See Martinez v. Aaron*, 570 F.2d 317, 319–20 (10th Cir. 1978) (en banc) (per curiam); *Jennings v. Yates*, 792 Fed. App'x 606, 609 (10th Cir. 2019).

[8] Any duplicates found in the parties' filings are not included in this list.

4. Document marked, "PROBLEM REFERENCE #: 990929670," dated November 18, 2024, in which UDOC staff stated, "PREA incidents are not grievable. LEB has an active investigation into your allegations."[9] Dkt. No. 1-2, at 11.
5. "Level I Grievance Staff Response," dated November 21, 2024, numbers 990929668 and 990929666, stating, "Mr. Viens is grieving that he was sexually abused by a clinical staff member . . . including sexual intercourse and other acts." Dkt. No. 1-2, at 13. Staff concluded, "Grievance Resolved. Dr. Waltrip will contact Mental Health to ensure someone goes to speak with Mr. Viens about his concerns from a mental health perspective. This will also be followed up upon with the proper authorities." *Id.*
6. "Offender Grievance Form Level 2 Grievance," dated November 24, 2024, number 990929670, in which Plaintiff states that Utah State Correctional Facility ("USCF") "has failed to abide by Utah State Code 64-13-47 Prison Sexual Assault Prevention Program." Dkt. No. 1-2, at 10.
7. "Grievance Problem Form," dated December 2, 2024, reference number 990929666, responding to Plaintiff, "You have violated grievance policy AG38 by grieving PREA. [Utah LEB] has an active investigation into your allegations." Dkt. No. 1-2, at 5. The grievance was not opened because the PREA issue was deemed "NOT GRIEVABLE." *Id.*
8. "Grievance Problem Form," dated December 2, 2024, reference number 990929670, responding to Plaintiff, "You have violated policy AG38 by jumping grievance levels [and] . . . grieving PREA. [Utah LEB] has an active investigation into your allegations." Dkt.

---

[9] "LEB" appears to refer to the Utah Law Enforcement Bureau ("Utah LEB"), a "division of the Utah Department of Corrections responsible for conducting criminal/administrative investigations." Glossary of Terms, Utah Board of Pardons & Parole, https://bop.utah.gov (last visited Sept. 16, 2026).

No. 1-2, at 9. The grievance was not opened because "[a] grievance has already been opened on this issue." *Id.*

9. Letter from USCF grievance coordinator, dated April 21, 2025, grievance number 990929670, stating, "[y]ou cannot submit a Level III Grievance in response to a Problem Form. Doing so violates Policy AG38 by jumping grievance levels." Dkt. No. 51-6.
10. "Grievance Rejection Form," dated April 28, 2025, number 990929666, stating the grievance was rejected as "[t]he grievance attempts to address PREA issues not covered by the grievance process and which were also addressed in two previous grievances." Dkt. No. 51-11.
11. "Offender Grievance Form Level 1 Grievance," dated August 27, 2025, stating that the "[UDOC]/[USCF] failed to protect me from me being sexually abused by one Anjulie McFarland (& groomed) between Apr.-May of 2024 & Aug.-Sept. of 2025 . . . I on multiple occasions attempted to grieve this." Dkt. No. 51-12.
12. Letter from USCF grievance office, dated April 14, 2026, about "PREA Complaint," stating, "The grievance process is not the proper forum to seek immediate resolution for PREA complaints . . . The [UDOC] Administration has been notified." Dkt. No. 68-1.

On February 11, 2026, the court ordered that, "[n]ow that the *Martinez* report is available to Plaintiff, he should review it to determine if he still needs discovery . . . If he does file a request for discovery, he should tailor it to his needs in light of the documents provided to him by Defendants." Dkt. No. 57, p. 2.

Plaintiff now moves for additional discovery. Dkt. No. 60. McFarland responds that Plaintiff's requests for "Utah Department of Corrections . . . policy AG27, . . . [and] a copy of the version of [UDOC]'s grievance policy that is provided to inmates . . . are within the scope of her

*Martinez* Report . . . and she agrees to supplement her report to include those materials at the Court's direction." Dkt. No. 63. The court hereby directs that such supplementation take place. McFarland objects to Plaintiff's other requests, and Plaintiff has responded to those objections. *Id.*; Dkt. No. 67.

First, Plaintiff seeks information on Utah LEB's investigation of McFarland's alleged sexual misbehavior. Dkt. No. 60. Specifically, he requests "findings . . . ALL, digital, paper, witness statements, video, & EVERYTHING . . . This report will enable the court to see the efforts [Plaintiff] made to exhaust an available remedy . . . Also, phone call conversations (printed for my viewing)." *Id.* Utah LEB is a UDOC bureau conducting criminal and administrative investigations. Because Utah LEB's investigation does not appear to be part of the USCF grievance process, it is irrelevant and this request for discovery is denied.

Second, Plaintiff seeks "ALL letters & grievances pertaining to sex abuse allegations dates 10.1.2024 thru current date 2.22.2026 . . . These grievances consist of defendants Katlyn Condie & Faith Von Dwingelo as well." *Id.* But the only grievances relevant here are those involving the Eighth Amendment sexual-abuse allegations against McFarland. Dkt. No. 51. Thus, McFarland need only provide copies of any such grievances and responses. McFarland shall perform a review to ensure that all such documents are included in her *Martinez* report and provide supplementation if necessary.

Finally, Plaintiff seeks "letters [he] sent to the Exec. Dir. Brian Redd (at that time), 'Administration,' L.E.B., Doug Fawson, Mental Health (David Mangum)," believing that he "also wrote the Level III Grievance Coordinator & even the Medical Director." Dkt. No. 60. But only documents concerning the grievance process as to the Eighth Amendment sexual-abuse allegations

against McFarland are relevant at this point. Letters not exchanged within USCF's grievance process are therefore not germane and need not be produced.

**CONCLUSION & ORDER**

For the reasons above, the court ORDERS as follows:

1. Defendants Von Dwingelo and Condie's motion to dismiss is GRANTED. Dkt. No. 34.
2. Plaintiff's motion for discovery is GRANTED IN PART and DENIED IN PART. Dkt. No. 60. Within thirty days, Defendant must supplement her *Martinez* report by providing the following documents:
   a. "Utah Department of Corrections . . . policy AG27";
   b. A copy of the version of UDOC's grievance policy that is provided to inmates; and
   c. Any additional previously undisclosed grievance documents relevant to the Eighth Amendment sexual-abuse allegations against McFarland.
3. Within thirty days, counsel must further supplement the *Martinez* report on behalf of McFarland by filing a declaration confirming that a follow-up review of grievance documents was completed, explaining the results, and attaching any relevant and previously undisclosed grievance documents.
4. Plaintiff's motion for "the Court to ORDER the prison Exec. Dir. Jared Garcia to allow [Plaintiff] a tablet . . . to access to a law library" is DENIED. Dkt. No. 66. First, Garcia is not a party to this suit, so the court lacks jurisdiction to issue an order directed at him. Second, the legal-access and equal-protection claims asserted in this motion are not included in the Complaint, Dkt. No. 1.
5. Plaintiff's request "to add further proof of exhaustion" is GRANTED. Dkt. No. 68.

6. Within thirty days of supplementing her *Martinez* report as discussed above, McFarland must file an updated motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies or file a document expressing her intent not to file such a motion.
    a. Within thirty days of receiving McFarland's motion for summary judgment, Plaintiff must respond, or risk dismissal of this action.
    b. Within thirty days of receiving Plaintiff's response, McFarland may reply.

DATED September 29, 2026.

BY THE COURT:

Jill N. Parrish
Chief United States District Court Judge
District of Utah